IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| RICKY TURNER, | * |
| Plaintiff, | * |
| v. | * |
| | *  CV 621-030 |
| CMFG LIFE INSURANCE COMPANY, | * |
| Defendant. | * |

O R D E R

Before the Court is Defendant CMFG Life Insurance Company's ("CMFG") motion to dismiss Plaintiff's amended complaint. (Doc. 12.) For the reasons that follow, Defendant's motion is **DENIED**.

I. BACKGROUND[1]

Plaintiff Ricky Turner is a Georgia resident whose late wife's ("Ms. Turner") accidental death was insured by two life insurance policies, both issued by CMFG: the "2010 Policy" and the "2019 Policy" (together, the "Policies").[2] (Doc. 9, ¶¶ 1-9.) The amount

---

[1] In deciding this motion to dismiss, the Court accepts all facts alleged in the amended complaint as true and construes all reasonable inferences in the light most favorable to Plaintiff. See Hoffman-Pugh v. Ramsey, 312 F.3d 1222, 1225 (11th Cir. 2002).

[2] Although Plaintiff did not attach the Policies (Docs. 12-1 and 12-2) as exhibits to his amended complaint, CMFG attached them to its motion to dismiss, and the documents are both undisputed and central to Plaintiff's amended complaint. (Doc. 9, ¶¶ 6-12, 19-21; See Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005) (holding that while "[t]he district court generally must convert a motion to dismiss into a motion for summary judgment if it considers

of insurance totaled $401,000, and Plaintiff was the beneficiary of both Policies. (Id. ¶¶ 10, 16.) Both Parties agree that CMFG paid the full death benefits under the Policies, and neither party disputes Plaintiff was ultimately entitled to such payment. (Doc. 12, at 4-7; Doc. 13, at 1.) However, Plaintiff claims the payment was late and in bad faith, so he brings this diversity suit under O.C.G.A. § 33-4-6. (Doc. 9, ¶¶ 32-35.) CMFG moves to dismiss. (Doc. 12.)

CMFG initially issued the Policies in 2010 and 2019, respectively. (Doc. 9, ¶¶ 6, 8.) In November 2019, Ms. Turner died as the result of an accident. (Id. ¶¶ 13-14.) Then, on April 13, 2020, Plaintiff filed a claim for the total principal amount under the Policies, and CMFG began processing the claim. (Id. ¶¶ 17-18.) Under the Policies, "[a]ll benefits . . . [were] payable as soon as [CMFG] receive[d] proper proof sufficient to determine liability." (Doc 12-1, at 9; Doc. 12-2, at 9.) The 2019 Policy (but *not* the 2010 Policy) goes on to state that

> if *we* fail to do so, *we* will, within 15 working
> days after receipt of due proof of loss,

---

materials outside the complaint . . . the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." (internal quotations and citations omitted).) Plaintiff's Demand Letters (Doc. 12-5) and "Accidental Death Claim Forms" (Docs. 12-3 and 12-4) are also undisputed and central to Plaintiff's amended complaint. (Doc. 9, ¶¶ 17, 30-31.) Accordingly, the Court declines to convert CMFG's motion into one for summary judgment. Further, the Court need not, and does not, consider whether the exhibits attached to Plaintiff's response brief (and incorporated therein) are central to Plaintiff's claim because the Court finds for Plaintiff even without considering those exhibits (Docs. 13-1, 13-2, and 13-3).

2

>     provide the *insured* with a notice which states
>     the reasons we have for failing to pay the
>     claim. When we have received all of the
>     information necessary to process the claim, we
>     have 15 working days to determine if the claim
>     will be paid. If we determine to pay a claim
>     and more than 15 working days have elapsed
>     from the date we received written proof of
>     loss, we will pay interest at 18% per annum on
>     the benefits due.

(Doc. 12-2, at 9) (emphasis in original).

What happened after CMFG began processing Plaintiff's claim is somewhat unclear. First, the Parties agree that CMFG requested documentation from Plaintiff, presumably to verify that his claim was proper. (Doc. 9, ¶ 18.) Plaintiff avers he "promptly" furnished CMFG with that documentation, which CMFG does not appear to dispute. (Id.) From there, the Parties disagree. As it must on this motion to dismiss, the Court views the facts in the light most favorable to Plaintiff.

Plaintiff asserts "CMFG possessed the 'requisite claim documentation' in May, 2020." (Doc. 13, at 3.) Plaintiff also claims that "[o]n or before July 17, 2020, [CMFG] received 'proper proof sufficient to determine liability' with respect to Plaintiff's claims." (Doc. 9, ¶ 22.) In support of his claims, Plaintiff cites to an email from CMFG's attorney that states "[b]eginning in May 2020, upon receipt of the requisite claim documentation, CMFG engaged in a prompt and thorough claim investigation." (Doc. 9-1, at 3.) Thus, Plaintiff claims CMFG

3

admitted it had "proper proof sufficient to determine liability" in May 2020, and he therefore asserts that his "claims became immediately payable well before July 17, 2020," that "CMFG's investigation into Plaintiff's claims was complete" by that date, and that "CMFG's time for investigating and adjusting Plaintiff's claims . . . had expired" by July 2020. (Doc. 9, ¶¶ 23-27.)

Although the Court accepts Plaintiff's version of the facts as true at this stage, CMFG's averments provide helpful context for its motion. CMFG argues its investigation was not complete in July 2020, and that Plaintiff's demand was therefore improper. (Doc. 12, 10-11.) It claims that although *Plaintiff* had furnished the information required *of him* by that time, it was entitled to continue investigating and receive documents from third parties such as health care providers, pharmacies, financial institutions, and employers to determine Plaintiff's eligibility for benefits. (Id. at 11.) CMFG argues that because its investigation was incomplete, "Plaintiff cannot establish he made a proper demand under O.C.G.A. § 33-4-6," which requires any demand be made after the "express investigation end date [within the Policies] had expired." (Id. at 13.) CMFG maintains the Policies do not include an express investigation end date; they only include a penalty for payments occurring more than 15 days after the investigation was complete. (Doc. 15, at 3-5.) Finally, even if Plaintiff's demand was timely, CMFG argues it was still improper because the demand

4

sought payment to "Plaintiff and his attorney Justin T. Jones, PC," which was incongruous with the named beneficiary of the Policies – Plaintiff alone. (Doc. 12, at 14.)

Ultimately, CMFG paid the claims on October 30, 2020. (Doc. 9-1, at 3.) Plaintiff then brought this action seeking to recover statutory damages for the allegedly unlawful delay. The Court addresses the Parties' arguments below.

## II. MOTION TO DISMISS STANDARD

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984). Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550

U.S. at 570). The plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully." Id. A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)).

### III. DISCUSSION

The crux of this motion is whether Plaintiff has sufficiently alleged CMFG "receive[d] proper proof sufficient to determine liability" and had "all of the information necessary to process the claim" at the time he made his demand. (Doc. 12-1, at 9; Doc. 12-2, at 9.) If so, and if his demand was otherwise proper, then

he sufficiently alleges CMFG's investigation was complete when he demanded payment, and the suit survives dismissal. If not, then his claim was improper and his suit for bad faith is foreclosed. First, the Court will address the timeliness of Plaintiff's demand for payment – in essence, whether Plaintiff alleges he made his demand after CMFG's investigation was complete. Because the Court finds that he did so, the Court will then address whether Plaintiff's demand was otherwise proper, which the Court also answers in the affirmative. As a result, CMFG's motion is denied.

## A. Timeliness of Plaintiff's Demand

O.C.G.A. § 33-4-6 provides the requirements for a bad faith action under Georgia law. It states:

> In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.

O.C.G.A. § 33-4-6. Georgia courts have further outlined the demand requirements for a bad faith action, stating:

> To prevail on a claim for an insurer's bad faith under O.C.G.A. § 33-4-6, the insured must prove: (1) that the claim is covered under the policy, (2) that a demand for payment was made against the insurer within 60 days prior to filing suit, and (3) that the

7

> insurer's failure to pay was motivated by bad faith. Since the statute imposes a penalty, its requirements are strictly construed. Consequently, a proper demand for payment is essential to recovery.

Lavoi Corp. v. Nat'l Fire Ins. of Hartford, 666 S.E.2d 387, 391 (Ga. Ct. App. 2008). "To be proper, 'the demand must be made at a time when immediate payment is due. An insured cannot legally demand immediate payment if the insurer has additional time left under the terms of the insurance policy in which to investigate or adjust the loss.'" Villa Sonoma at Perimeter Summit Condo. Ass'n, Inc. v. Com. Indus. Bldg. Owners All., Inc., 824 S.E.2d 738, 743 (Ga. Ct. App. 2019) (quoting BayRock Mtg. Corp. v. Chicago Title Ins. Co., 648 S.E.2d 433 (Ga. Ct. App. 2007)). "If the investigation or adjustment of the claim is ongoing, consistent with the policy terms, the insurer is not yet in a position to conclude that the insured had a right to the amount claimed in the demand." Id. (citation omitted). Thus, if immediate payment was not due at the time Plaintiff made his demand, his bad faith action cannot proceed.

Here, Plaintiff made his initial claim for benefits on April 13, 2020. (Doc. 9, ¶ 17.) Neither party contests the claim was covered under the Policies.[3] Plaintiff claims CMFG "received

---

[3] "When an insurance contract provision is clear and unambiguous, its interpretation is a matter for the court. Under Georgia law, contracts of insurance are interpreted by ordinary rules of contract construction. Where the terms are clear and unambiguous, and capable of only one reasonable

'proper proof sufficient to determine liability' with respect to Plaintiff's claims sometime in May, 2020." (Doc. 9, ¶ 23.) Then, on July 17, 2020, Plaintiff claims he demanded payment pursuant to O.C.G.A. § 33-4-6. (Id. ¶¶ 30-31.) Because Plaintiff's demand came after he alleges his benefits were immediately payable, the demand was proper, and CMFG had 60 days to furnish payment. (Villa Sonoma, 824 S.E.2d at 743; O.C.G.A. § 33-4-6.) Plaintiff alleges CMFG failed to do so, instead making payment in October 2020 – in any circumstance, more than 60 days after July 17. (Doc. 9 ¶ 33; Doc. 9-1, at 3.) Thus, Plaintiff has stated a claim under O.C.G.A. § 33-4-6.

CMFG's counterarguments fail as a matter of law. CMFG claims Plaintiff's demand was untimely because CMFG was still investigating Plaintiff's claim at the time the demand was made. (Doc. 12, at 8-13.) Citing Villa Sonoma, it claims "the Policies' terms do not include an express time period for completing the investigation," and that the investigation here was not complete simply because Plaintiff provided the documentation CMFG requested of him. (Id. at 10-11.) But Plaintiff does not allege the investigation was complete simply because *he* provided CMFG with the paperwork it requested of him; rather, he alleges CMFG's investigation was *entirely* complete when he demanded payment.

---

interpretation, the court is to look to the contract alone to ascertain the parties' intent." Lavoi, 666 S.E.2d at 391 (quotations and citations omitted).

9

(Doc. 9, ¶ 26 (stating that "[o]n or before July 17, 2020, CMFG's investigation into Plaintiff's claims was complete").) In sum, Plaintiff argues CMFG had all the documentation it needed (from him and/or from anyone else), and that its investigation was complete, by the date he made his demand. Whether that assertion is true is a question for summary judgment and beyond, not dismissal. The Policies state that payment is due as soon as CMFG receives proper proof sufficient to determine liability, and Plaintiff avers CMFG had received that proof at the time he made his demand.[4] CMFG's undisputed failure to pay within 60 days of that demand means dismissal would be inappropriate.

## B. Plaintiff's Demand Otherwise Proper

Next, CMFG argues Plaintiff's demand was improper because he demanded payment be furnished to himself "and his attorney Justin T. Jones, PC." (Doc. 12, at 14-15; Doc. 12-5, at 2-3.) CMFG's argument boils down to the proposition that by requesting payment through counsel, Plaintiff failed to properly demand payment under

---

[4] CMFG also argues that the 2019 Policy, which provides for a 15-day time limit after CMFG "receives all information necessary to process the claim" to pay the claim, lest it be liable for 18% interest on the claim, does not constitute "an investigation expiration date." (Doc. 12, at 11-12.) The Court simply disagrees. The plain language of the 2019 Policy provides that CMFG has 15 working days to determine if the claim will be paid after it receives all of the information necessary to process the claim - e.g., when its investigation is complete. See Investigation, Black's Law Dictionary (11th ed. 2019) (defining "investigation" as "the activity of trying to find out the truth about something, such as a crime, accident, or historical issue; esp., either an authoritative inquiry into certain facts").

10

the policy, because the policy does not include his counsel as a beneficiary. However, in Georgia, an attorney's authority

> is determined by the contract between the attorney and the client and by instructions given the attorney by the client, and in the absence of express restrictions the authority may be considered plenary by the court and opposing parties. The authority may be considered plenary unless it is limited by the client and that limitation is communicated to opposing parties. Therefore, from the perspective of the opposing party, in the absence of knowledge of express restrictions on an attorney's authority, the opposing party may deal with the attorney as if with the client, and the client will be bound by the acts of his attorney within the scope of his apparent authority. The client's remedy, where there have been restrictions not communicated to the opposing party, is against the attorney who overstepped the bounds of his agency, not against the third party.

<u>Pembroke State Bank v. Warnell</u>, 471 S.E.2d 187, 189 (Ga. 1996) (citations and quotation omitted).

Here, CMFG claims Plaintiff failed to plausibly allege it had notice or confirmation that Plaintiff was represented by counsel at the time of the demand, and that CMFG was not authorized to pay the benefits in question "jointly to a third party." (Doc. 12, at 15.) However, Plaintiff alleged that he, "by and through counsel, demanded payment of the total principal amount of accidental life insurance coverage." (Doc. 9, ¶ 30.) In the demand letters acknowledged by CMFG, Attorney Jones identified Plaintiff as his client, and payment was demanded to Plaintiff "and his attorney

Justin T. Jones, PC." (Doc. 12-5, at 2-3.) Thus, Plaintiff's allegation and demand complied with the Policies even while he demanded payment to Plaintiff by and through his attorney because CMFG was permitted to "deal with the attorney as if with the client." Pembroke, 471 S.E.2d at 189. Therefore, Plaintiff's demand was proper.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's motion to dismiss (Doc. 23) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 3rd day of February, 2022.

```
_____
J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
```