IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

RICKY TURNER,

      Plaintiff,

         v.

CMFG LIFE INSURANCE COMPANY,

      Defendant.

CV 621-030

## O R D E R

Presently pending before the Court are: Plaintiff's motion for partial summary judgment (Doc. 35), Plaintiff's second motion for partial summary judgment (Doc. 57), Plaintiff's motion for exclusion of Barbara Mueller's opinions (Doc. 63), Defendant's motion to exclude John Manly's opinions (Doc. 65), Defendant's motion for summary judgment (Doc. 67), Defendant's motion for hearing (Doc. 84), Defendant's motion to strike Plaintiff's surreply (Doc. 88), and Defendant's motion to withdraw its motion to strike (Doc. 90).  The Court addresses each of these motions below.

## I. BACKGROUND

Plaintiff originally filed suit on March 8, 2021 in the Superior Court of Emanuel County, Georgia against Defendant for bad faith penalties and attorney's fees.  (Doc. 1-1, at 4-8.)

Defendant removed the case to this Court on April 15, 2021 pursuant to 28 U.S.C. §§ 1332(a), 1441, and 1446. (Doc. 1, at 1.) Plaintiff then filed two amended complaints with the operative complaint filed on September 28, 2022 (the "Complaint"). (Doc. 76.) The Complaint alleges Defendant, an insurance company, issued Policy GP014DC (the "2010 Policy") on September 1, 2010 to insure against the accidental death of Plaintiff's wife, Sherry Turner (the "Insured"). (Id. at 1-2.) Then, on July 1, 2019, Defendant issued Policy GP 01412-01001985 (the "2019 Policy") also insuring against the accidental death of the Insured. (Id. at 2.) The Insured died on November 22, 2019 as the result of an accident that occurred on July 14, 2019. (Id.) Plaintiff, as the Insured's surviving spouse, was the beneficiary on both the 2010 Policy and the 2019 Policy (collectively, the "Policies") and filed a claim for the total benefits under the Policies. (Id. at 3.)

The Parties agree that Defendant paid Plaintiff the full amount of death benefits due under the Policies, and neither party disputes Plaintiff was entitled to such payment. (Doc. 24, at 2.) The only issue in this case is that Plaintiff claims Defendant's payment was late and in bad faith, so he brings this diversity suit under O.C.G.A. § 33-4-6. (Doc. 76, at 4.)

The Policies contain a few relevant provisions the Court will outline here. First, to file a claim, the Policies provide:

> When filing a claim, please provide the following information: • covered person's name • covered person's date of birth • covered person's date of loss (death or sickness covered within the policy/certificate) •

2

> policy/certificate number(s) • evidence of death (a
> death certificate or in most cases, an online obituary)
> • information related to the loss: • Physician names and
> contact information if loss was related to a sickness •
> Investigators, Medical Examiner's name and contact
> information if loss was due to an accident.

(Doc. 69-3, at 2; Doc. 69-4, at 2.)   Furthermore, the Policies

explain "benefits are provided to *covered persons* for *accidental*

*death* and *accidental dismemberment*." (Doc. 69-3, at 6; Doc. 69-

4, at 6.)   Accidental death is defined as "[d]eath resulting from

an *injury*, and occurring within 1 year of the date of the *accident*

causing the *injury*" and an accident is defined as "[a]n occurrence

which is unexpected or unforeseen, either as to its cause or as to

its result."   (Doc. 69-3, at 5; Doc. 69-4, at 5.)   Accidental

dismemberment is defined as "[a] *dismemberment* resulting from an

*injury*, and occurring within 1 year of the date of the *accident*

causing the *injury*."   (Doc. 69-3, at 5; Doc. 69-4, at 5.)   The

Policies differ as to their requirements under "Part 10: When There

Is a Claim," so the Court will outline the provision from each

Policy.   (Doc. 69-3, at 9; Doc. 69-4, at 9.)   The 2010 Policy

provides in pertinent part:

> Notice of claim must be given to *us* within 30 days after
> the date the *loss* or covered *injury* occurs, or as soon
> as reasonably possible.   *You* may give notice by
> contacting *us* or *you* may have someone do it for *you*.
> . . .
> Written proof of *loss* or covered *injury* must be sent to
> *us* within 90 days after the date of the *loss* or covered
> *injury*, or as soon as reasonably possible.
> . . .
> All benefits covered by this certificate are payable as
> soon as *we* receive proper proof sufficient to determine
> liability.

. . .

No legal action: (a) can be brought against *us* for at least 60 days after written proof of *loss* or covered *injury* has been furnished[.]

(Doc. 69-3, at 9.)   The 2019 Policy provides in pertinent part:[1]

Notice of claim must be given to *us* within 30 days at *our office* after the date the *loss* or covered *injury* occurs, or as soon as reasonably possible.   Failure to give notice within that time shall not invalidate nor reduce any claim if it can be shown not to have been reasonably possible to give notice and that notice was given as soon as was reasonably possible.

. . .

Written proof of *loss* or covered *injury* must be sent to *us* within 90 days after the date of the *loss* or covered *injury*, or as soon as reasonably possible.

. . .

All benefits covered by this certificate are payable as soon as we receive proper proof sufficient to determine liability but if *we* fail to do so, *we* will, within 15 working days after receipt of due proof of loss, provide the *insured* with a notice which states the reasons we have for failing to pay the claim.   When we have received all of the information necessary to process the claim, we have 15 working days to determine if the claim will be paid.   If we determine to pay a claim and more than 15 working days have elapsed from the date we received written proof of loss, we will pay interest at 18% per annum on the benefits due.

. . .

No legal action: (a) can be brought against *us* for at least 60 days after written proof of *loss* or covered *injury* has been furnished[.]

(Doc. 69-4, at 9-10.)

On April 14, 2020, Defendant uploaded the death certificate and claims forms submitted by Plaintiff.   (Doc. 69-1, at 2.)   On

---

[1] The Court notes that the filed version of the 2019 Policy is missing several letters, typically the letter "s" on this page of the Policy; therefore, the Court has filled in the missing letters to the best of its ability based on the 2010 Policy language and other context clues.   (See Doc. 69-4, at 9.)

May 14, 2020, Defendant sent Plaintiff a letter requesting information regarding hospital admission/discharge summary for the Insured and requested five to seven business days to process the claim once it received all requested information. (Doc. 57-3, at 32.)  On May 20, 2020, Defendant uploaded 1044 pages of medical records that were produced by Plaintiff. (Doc. 69-1, at 2.)  On June 12, 2020, July 10, 2020, August 7, 2020, September 4, 2020, and October 2, 2020, Defendant sent Plaintiff automatic letters stating "[b]efore we can proceed in the processing of your claim, the necessary claim forms and required information for establishing proof of loss must be provided. When this information is received, we will determine the benefits payable within 5-7 business days and send you a written reply regarding the status of your claim." (Doc. 57-3, at 33-37.)  Meanwhile, Plaintiff and his counsel contacted Defendant numerous times to request the status of the claims throughout the summer of 2020. (Doc. 69-1, at 3-4.)  On July 17, 2020, Defendant received Plaintiff's O.C.G.A. § 33-4-6 demand for payment via facsimile. (Id. at 4.)

Meanwhile, according to Defendant's Notes for Claim, it referred the medical records in the case to a nurse consultant for review on June 5, 2020. (Doc. 57-3, at 21.)  The nurse's findings have been redacted but were added to the case file on July 1, 2020. (Id.)  Then on August 7, 2020 there is a file note stating the medical records were being re-reviewed, and on August 31, 2020 there was an attempt to get in touch with the doctor that certified

the death certificate to ask how the manner of death was determined. (Id. at 22.) Because the doctor could not be contacted, the notes reflect the claim was referred to Dane Street, an outside consultant, on August 31, 2020 for further review, but the referral did not save due to the large data upload, so it was then resubmitted on September 16, 2020. (Id.) On October 19, 2020, Defendant received the Dane Street review, and the same day notated that it shall proceed with payment under the policy. (Id. at 22-23.) There are also additional notes illustrating the correspondence between Plaintiff and Defendant throughout this time. (See id. at 16-22.) Ultimately, Plaintiff received the full payout he requested. Nonetheless, he filed this suit on March 8, 2021. (Doc. 1-1, at 4.)

After the case was removed to this Court, the original scheduling order was entered on June 21, 2021. (Doc. 17.) On July 7, 2021, Plaintiff served written discovery, including interrogatories, request for production, and requests for admission, upon Defendant. (Doc. 35-3, at 1.) On July 28, 2021, Defendant's counsel requested the deadline for the pending discovery be extended to August 27, 2021, and Plaintiff's counsel agreed to the extension. (Id.) However, on August 17, 2021, the Court stayed all discovery deadlines in the case pending the Court's ruling on a motion to dismiss and ordered the Parties to meet and confer within fourteen days of the Court's ruling on the

motion to dismiss.   (Doc. 22.)   The interrogatories and other requests were not provided to Plaintiff.

On February 3, 2022, the Court denied the pending motion to dismiss (Doc. 24) and started the fourteen-day timeline for the Parties to meet and confer.   On February 17, 2022, the Parties held a Rule 26(f) conference and agreed to a 140-day discovery period, commencing March 3, 2022.   (Doc. 43-1, at 2; Doc. 28.) The Parties' Rule 26(f) Report makes no mention of the discovery requests that were submitted before the August 2021 stay of discovery.   (See Doc. 28.)   This leads the Court to the first motion pending before it.

## II. PLAINTIFF'S FIRST MOTION FOR PARTIAL SUMMARY JUDGMENT

On March 21, 2022, Plaintiff filed his motion for partial summary judgment, arguing Defendant failed to timely respond to his requests for admission which warrants the grant of summary judgment and finding the following facts to be true: the Insured died on November 22, 2019 as the result of an "accident" as the term is defined in the Policies; Plaintiff was entitled to the proceeds of the Policies; and Defendant received "proper proof sufficient to determine liability" in May 2020.   (Doc. 35, at 1.) In response, Defendant argues the substance of the motion is a discovery motion, as he is not seeking summary judgment on any particular claim or defense; nevertheless, it argues the motion should not be granted as it is "nothing more than a procedural

7

'gotcha' attempt borne from Plaintiff's inaccurate interpretation of discovery deadlines." (Doc. 43, at 1.) Defendant opposes the motion, but in the alternative, it moves to amend or withdraw the admissions Plaintiff seeks. (<u>Id.</u> at 2.)

## A. Legal Standard

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted if the movant shows there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Here, Plaintiff is asking the Court to deem facts admitted, not to determine whether judgment shall be entered, so the Court does not find this is a proper basis for summary judgment.[2] Nevertheless, the Court will address Plaintiff's motion and request for relief.

## B. Discussion

Before discovery was stayed on August 17, 2021, Plaintiff served a variety of discovery requests on Defendant, including requests for admission, and after an extension the responses were not due until August 27, 2021. (Doc. 35-3, at 1.) The Parties previously held a Rule 26(f) conference on June 4, 2021 (Doc. 16); however, the Court's August 17, 2021 Order stayed all discovery in this case and instructed the Parties to have another Rule 26(f) conference upon the Court's ruling on the pending motion to dismiss

---

[2] In this action, the Clerk of Court provided Defendant notice of the motion for summary judgment motion, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 36.) For that reason, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied.

(Doc. 22, at 5).  Plaintiff argues that on February 3, 2022 when the Court denied Defendant's motion to dismiss (Doc. 24), the clock again began to run on Defendant's time to respond to the requests for admission, to which it had 10 days left to timely respond. (Doc. 35-4, at 1-2.)  Defendant argues that the Court's original scheduling order deadlines (Doc. 17) expired before the Court ruled on the motion to dismiss, and so all deadlines were subsequently amended and re-set.  (Doc. 43, at 3 n.3.)  Furthermore, Defendant argues that at the Parties' Rule 26(f) conference on February 17, 2022, they agreed to a 140-day discovery period commencing March 3, 2022, and at no time during this meeting did Plaintiff's counsel communicate his position that Defendant's discovery responses were then past due.  (Id.)  Plaintiff stands by his position that the requests for admission were due within 10 days after the Court ruled on the motion to dismiss.  (Doc. 45, at 3.)  He believes that this deadline was still in place because "[Defendant] did not request an extension of the time in which to serve discovery." (Id.)

The Court finds that since it stayed *all* discovery on August 17, 2021 and instructed the Parties to meet and confer after it ruled on the pending motion to dismiss, it was reasonable for Defendant to interpret the stay as re-starting discovery after the Court's ruling on the motion to dismiss.  The Parties, during their Rule 26(f) meeting on February 17, 2022, decided among themselves to commence discovery on March 3, 2022.  (Doc. 28, at 2.)  The

Parties submitted their Rule 26(f) Report on March 3, 2022, and the report provided no mention of any pending requests for admission or any concerns about missed deadlines. (See id. at 1-6.)

The Eleventh Circuit has a "strong preference for deciding cases on the merits – not based on a single missed deadline – whenever reasonably possible." Perez v. Wells Fargo N.A., 774 F.3d 1329, 1332 (11th Cir. 2014); see also Farquharson v. Citibank, N.A., 664 F. App'x 793, 797 (11th Cir. 2016). Keeping in line with this precedent, the Court will not deem Defendant's requests for admission as admitted for purposes of determining this case. It appears from the facts that the untimeliness of Defendant's responses was merely the result of a misunderstanding between the Parties pursuant to the Court's discovery stay, and the Court will not reward Plaintiff for failing to raise this issue until the eleventh hour. Based on the fact Plaintiff did not raise concerns with these requests for admission during the Rule 26(f) Conference, and waited until March 21, 2022 to move the Court to deem these requests for admission as admitted, the Court does not find Plaintiff acted in good faith or that Defendant eluded the requests and intentionally failed to respond. Based on these findings, and the fact this is not the proper basis for a motion for summary judgment, the Court will not deem the facts admitted. Therefore, Plaintiff's motion for summary judgment (Doc. 35) is **DENIED** and Defendant's motion to amend or withdraw admissions (Doc. 43) is

also **DENIED**.   The Court will move forward to the Parties'
additional motions in an attempt to determine the outcome of this
case on the merits.


## III. PLAINTIFF'S MOTION TO EXCLUDE

Plaintiff moves, pursuant to Federal Rule of Evidence 702, to
exclude the opinions of Barbara Mueller, Defendant's proposed
expert. (Doc. 63.) Specifically, he argues Ms. Mueller's opinions
invade the province of the Court, are unreliable, and do not assist
the trier of fact. (Id. at 1.)

### A. Legal Standard

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge,
skill, experience, training, or education may testify in
the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other
specialized knowledge will help the trier of fact to
understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles
and methods; and

(d) the expert has reliably applied the principles and
methods to the facts of the case.

"As the Supreme Court recognized in Daubert v. Merrell Dow Pharms.,
Inc., [509 U.S. 579, 589 (1993)], Rule 702 plainly contemplates
that the district court will serve as a gatekeeper to the admission
of [expert] testimony." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK

11

Ltd., 326 F.3d 1333, 1340 (11th Cir. 2003). "The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

The Eleventh Circuit has explained that district courts are to engage in a three-part inquiry to determine the admissibility of expert testimony under Rule 702. Quiet Tech., 326 F.3d at 1340. Specifically, the court must consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in Daubert; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Id. at 1340-41 (citations omitted).

First, an expert may be qualified to testify due to his knowledge, skill, experience, training, or education. Trilink Saw Chain, LLC v. Blount, Inc., 583 F. Supp. 2d 1293, 1304 (N.D. Ga. 2008) (citation omitted). "A witness's qualifications must correspond to the subject matter of his proffered testimony." Anderson v. Columbia Cnty., No. CV 112-031, 2014 WL 8103792, at *7 (S.D. Ga. Mar. 31, 2014) (citing Jones v. Lincoln Elec. Co., 188 F.3d 709, 723 (7th Cir. 1999)). However, an expert's training

need not be narrowly tailored to match the exact point of dispute. McDowell v. Brown, 392 F.3d 1283, 1297 (11th Cir. 2004).

Second, the testifying expert's opinions must be reliable. In Daubert, the Supreme Court directed district courts faced with the proffer of expert testimony to conduct a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." 509 U.S. at 592-93. There are four factors that courts should consider: (1) whether the theory or technique can be tested, (2) whether it has been subject to peer review, (3) whether the technique has a known or potential rate of error, and (4) whether the theory has attained general acceptance in the relevant community. Id. at 593-94. "These factors are illustrative, not exhaustive; not all of them will apply in every case, and in some cases other factors will be equally important in evaluating the reliability of proffered expert opinion." United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004) (citation omitted). For example, experience-based experts need not satisfy the factors set forth in Daubert. See United States v. Valdes, 681 F. App'x 874, 881 (11th Cir. 2017) (affirming admission of testimony from expert identifying firearms based upon years of experience working with firearms). However, "[t]he inquiry is no less exacting where the expert 'witness is relying solely on experience' rather than

13

scientific methodology." Summit at Paces, LLC v. RBC Bank, No. 1:09-cv-03504, 2012 WL 13076793, at *2 (N.D. Ga. May 22, 2012) (quoting FED. R. EVID. 702, advisory committee's notes to 2000 amendment)). Bearing in mind the diversity of expert testimony, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). "[W]hether the proposed testimony is scientifically correct is not a consideration for this court, but only whether or not the expert's testimony, based on scientific principles and methodology, is reliable." In re Chantix Prods. Liab. Litig., 889 F. Supp. 2d 1272, 1280 (N.D. Ala. 2012) (citing Allison, 184 F.3d at 1312). "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Id. (citations omitted and alterations adopted).

Regardless of the specific factors considered, "[p]roposed testimony must be supported by appropriate validation – i.e., 'good grounds,' based on what is known." Daubert, 509 U.S. at 590. In most cases, "[t]he expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so grounded." FED. R. EVID. 702, advisory committee's notes to 2000 amendment.

"Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough" to carry the proponent's burden. Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., 402 F.3d 1092, 1113 (11th Cir. 2005). Thus, "if the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Frazier, 387 F.3d at 1261 (citation omitted) (alterations in original).

Third, expert testimony must assist the trier of fact to decide a fact at issue. The Supreme Court has described this test as one of "fit." Daubert, 509 U.S. at 591. To satisfy this requirement, the testimony must concern matters beyond the understanding of the average lay person and logically advance a material aspect of the proponent's case. Id.; Frazier, 387 F.3d at 1262. Yet, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Frazier, 387 F.3d at 1262-63.

**B. Discussion**

Plaintiff is concerned with Ms. Mueller's two primary opinions:

> 1. CMFG Life Insurance Company (hereafter "CMFG") has a right and responsibility to review and investigate claims submitted under its policies. In this matter, at the time a demand for payment was made on July 17, 2020, CMFG's claim investigation was ongoing and CMFG did not yet have "proper proof sufficient to determine liability" to enable it to make an informed claim determination.

> 2. CMFG's investigation, evaluation, and payment of Plaintiff Ricky L. Turner's ("Mr. Turner") claims for accidental death insurance benefits was reasonable, consistent with the terms and conditions of the insurance policies and life insurance industry standards and practices. There was no unreasonable denial or withholding of benefits.[3]

(Doc. 63, at 1-2.) As to Opinion 1, Plaintiff argues it is irrelevant. (Id. at 3-4.) As to Opinion 2, Plaintiff argues it is unreliable and does not assist the trier of fact. (Id. at 4-8.) The Court addresses these arguments in turn.

1. Opinion 1

Plaintiff does not dispute that Ms. Mueller is qualified to offer this opinion; however, he argues it should be excluded because it "invades the province of this Court" and is simply a reiteration or recasting of the Defendant's interpretation of a contract. (Id. at 3 (citing United States ex rel. Duncan Pipeline, Inc. v. Walbridge Aldinger Co., No. CV 411-092, 2013 WL 1338392, at *5 (S.D. Ga. Mar. 29, 2013).) Defendant argues this opinion is permissible because "Ms. Mueller explains [Defendant's investigation] is consistent with generally accepted industry

---

[3] The Court will refer to these opinions as "Opinion 1" and "Opinion 2" as Plaintiff has them numbered in his motion.

standards governing life insurers and how claims professionals approach investigations under similar circumstances." (Doc. 73, at 3.) In support of his motion, Plaintiff again argues Opinion 1 would invade the province of the Court and the factfinder and mislead the jury on the appropriate law it must apply to the facts and should be excluded. (Doc. 79, at 3.)

The Court agrees with Plaintiff's arguments here and finds Ms. Mueller's Opinion 1 simply offers her interpretation of the Policies at issue and inserts Defendant's defense in her opinion yet offers nothing to assist the trier of fact in determining the ultimate issue in this case. "The question of interpretation of [a] contract is for the [trier of fact], and the question of legal effect is for the judge. In neither case do [courts] permit expert testimony." Walbridge, 2013 WL 1338392, at *5 (quoting Coyote Portable Storage, LLC v. PODS Enters., Inc., No. 1:09-cv-1152, 2011 WL 1870593, at *3-4 (N.D. Ga. May 16, 2011)). Following this precedent, the Court does not find Ms. Mueller's opinion to be proper expert testimony. Furthermore, Defendant has admitted it had evidence sufficient to determine liability on May 20, 2020 and was simply completing its investigation, which is inconsistent with Ms. Mueller's testimony that on July 17, 2020 Defendant did not have proof sufficient to determine liability. (See Doc. 69, at 4.) Based on the foregoing, the Court finds Opinion 1 provided by Ms. Mueller shall be excluded as it is neither proper expert

testimony nor is it a proper recitation of the facts of the case, as it is unsupported by the record.

### 2. Opinion 2

Next, Plaintiff moves to exclude Opinion 2, arguing it is unreliable and will not assist the trier of fact. (Doc. 63, at 4-8.) Specifically, he argues Ms. Mueller's opinion summarizes Defendant's claims and contains only bare conclusions without support or sources. (Id. at 5.) Further, he argues the question of whether Defendant acted reasonably is for the trier of fact and Ms. Mueller's opinion will not assist in that regard. (Id. at 8.) Defendant opposes Plaintiff's arguments, asserting Ms. Mueller's testimony is reliable and is the type courts have found assist the trier of fact in a bad faith action. (Doc. 73, at 4-5.) It argues Ms. Mueller is not simply offering a conclusion based on her experience, but rather is explaining *precisely* why she believes that additional investigation was required. (Id. at 5 (emphasis in original).)

"Proposed testimony must be supported by appropriate validation - i.e., 'good grounds,' based on what is known." Daubert, 509 U.S. at 590. In this instance, Ms. Mueller provides a thorough explanation of how Defendant's steps in this case were in line with industry standards for insurers. (See Doc. 50, at 12-13.) Specifically, she outlines that "[i]nsurers have an obligation to evaluate claims thoroughly and fairly," "have the

right to conduct claim investigations to independently verify and evaluate the claims presented," and that in her opinion, Defendant acted reasonably in handling the claims.   (Id. at 12.)   Based on Ms. Mueller's over 50 years of insurance experience, and education, training, and experience, the Court finds her opinions are reliable and her expertise in the subject area could be helpful to the trier of fact.   (See id. at 14.)   Plaintiff continually argues that Ms. Mueller fails to explain the basis for her opinion that Defendant acted reasonably; however, the Court disagrees with this contention due to her explanation of Defendant's actions and how they were "consistent with life insurance industry standards and practices."   (See Doc. 79, at 3; Doc. 50, at 12-13.)   Based on these findings, the Court does not find it proper to exclude Opinion 2 of Ms. Mueller's expert report and leaves it to the trier of fact to determine the credibility of witnesses.

**C. Conclusion**

Based on the foregoing, Plaintiff's motion to exclude (Doc. 63) is **GRANTED IN PART and DENIED IN PART**.   Ms. Mueller's Opinion 1 shall be excluded, and Opinion 2 shall not be excluded.


## IV.   DEFENDANT'S MOTION TO EXCLUDE

Defendant moves to exclude the expert opinion of Plaintiff's expert John Manly regarding the reasonableness of a 40% contingency fee arrangement in conjunction with the attorney's fees Plaintiff

seeks to recover under O.C.G.A. § 33-4-6(a). (Doc. 65, at 1.) It argues Mr. Manly's opinion lacks proper foundation, as it is not based on facts or documents reviewed by him, and argues it is unreliable as a matter of law because reasonable attorney fees cannot be based on discussion of a contingency fee agreement alone. (Id.) In response, Plaintiff argues the terms of Mr. Turner's contingency fee were disclosed in discovery during his deposition, and the increased effort in the case can be deduced from the pleadings. (Doc. 77, at 1.) Further, he argues Mr. Manly did not rely solely on Plaintiff's fee agreement but reviewed the pleadings, discovery, and correspondence in the case, and so his opinion is reasonable given the facts and circumstances of the case. (Id. at 6.) In support of its motion, Defendant argues that Plaintiff's response "further cements" its argument that Mr. Manly's opinion is unreliable, not based on substantiated facts, and should be excluded for various reasons. (Doc. 83, at 1.) Specifically, Defendant argues that if the value of counsel's services is "so obvious" then Mr. Manly's testimony is unnecessary, further there was no evidence the contingency fee agreement even existed at the time Mr. Manly offered his expert report, reasonableness requires more than a naked opinion, and Mr. Manly's opinion is unreliable because it is not based on the value of services actually rendered. (Id. at 2-5.)

The biggest concern the Court has with Mr. Manly's expert report is that there is no evidence he even reviewed the contingency fee agreement that is the subject of his opinion. His expert report was signed on May 26, 2022; however, the Deposition of Mr. Turner in which he discussed the 40% contingency fee agreement did not take place until July 25, 2022. (See Doc. 65-1, at 5; Doc 77-1, at 2, 16.) Without having the actual agreement, it is impossible for Mr. Manly to lay the foundation of his expert testimony regarding the alleged contingency fee. See Allison, 184 F.3d at 1306 ("The burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert.") Since Plaintiff only points to Mr. Turner's deposition testimony, which in actuality was after the date the expert report was furnished, the Court finds Mr. Manly did not have the proper foundation to opine on an alleged contingency fee agreement. Based on this shortcoming, the Court finds Mr. Manly's expert opinion is not substantiated by the facts in the record, and therefore is not sufficiently reliable. Consequently, the Court **GRANTS** Defendant's motion to exclude Mr. Manly's testimony. (Doc. 65.)

## V. OTHER MOTIONS FOR SUMMARY JUDGMENT

Plaintiff filed a second motion for partial summary judgment, requesting the Court find: both of his claims were payable based solely upon the documents Plaintiff provided; Defendant had proper

proof sufficient to determine liability on May 20, 2020; Plaintiff's demands were served when both claims were payable; Defendant's conduct in response to Plaintiff's demands constitutes bad faith as a matter of law; and Defendant is liable for the $232,548.07 as a statutory bad faith penalty. (Doc. 57, at 1.) Defendant also moves for summary judgment on the case, arguing the evidence shows that no genuine issues of material fact remain, and Defendant is entitled to judgment as a matter of law. (Doc. 67, at 1.) Since both summary judgment motions turn on the same determinations by the Court, it will review the motions simultaneously.

## A. Legal Standard

Under Federal Rule of Civil Procedure 56, a motion for summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'material' if . . . it might affect the outcome of the case . . . [and it] is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259-60 (11th Cir. 2004) (citations omitted). The Court must view factual disputes in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [the non-

moving party's] favor." <u>United States v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted). The Court should not weigh the evidence or determine credibility. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586 (citations omitted). A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. <u>See e.g.</u>, <u>Tidwell v. Carter Prods.</u>, 135 F.3d 1422, 1425 (11th Cir. 1998).

The movant may "satisfy its initial burden on summary judgment in either of two ways." <u>McQueen v. Wells Fargo Home Mortg.</u>, 955 F. Supp. 2d 1256, 1262 (N.D. Ala. 2013) (citing <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115-16 (11th Cir. 1993)). "First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand." <u>Id.</u> (citation omitted). If this occurs, "the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." <u>Id.</u> (citation omitted). Or second, movant may "provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove [his] case at trial." <u>Id.</u> (citation omitted and alterations in original).

"Parties may not, by the simple expedient of dumping a mass of evidentiary material into the record, shift to the Court the burden of identifying evidence supporting their respective positions." Preis v. Lexington Ins. Co., 508 F. Supp. 2d 1061, 1068 (S.D. Ala. 2007). Essentially, the Court has no duty "to distill every potential argument that could be made based upon the materials before it on summary judgment." Id. (citing Resol. Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995)). Accordingly, the Court will only review the materials the Parties specifically cite and legal arguments they expressly advance. See id.

The Clerk of Court provided each Party notice of the summary judgment motions, the right to file affidavits or other materials in opposition, and the consequences of default. (Docs. 58, 71.) For that reason, the notice requirements of Griffith, 772 F.2d at 825, are satisfied. Each Party had ample time to file replies, and each did so. The time for filing materials has expired, the issues have been thoroughly briefed, and the motions are now ripe for consideration. In reaching its conclusions herein, the Court has evaluated the Parties' briefs, other submissions, and the evidentiary record in the case.

## B. Plaintiff's Second Motion for Partial Summary Judgment

First, Plaintiff argues Defendant's failure to accept the terms of his O.C.G.A. § 33-4-6 demands had nothing to do with needing "proper proof sufficient to determine liability" and that

it had the documents reviewed by someone competent to do so by September 16, 2020. (Doc. 57-1, at 1.) He argues Defendant had the proper proof sufficient to determine liability on May 20, 2020, so both claims became payable on that day. (Id. at 9.) Further, he argues that Defendant's belief that it could "investigate indefinitely" is flawed because the Policies did not afford it any time to investigate. (Id. at 11.) Therefore, Plaintiff argues he deserved the Policy payouts on May 20, 2020 right when he submitted the required proof. (Id.) Based on these facts, Plaintiff argues Defendant "had no reason whatsoever to resist and delay payment," it ignored his demands by failing to read them, and these actions support a finding that Defendant acted in bad faith and is liable for penalties under O.C.G.A. § 33-4-6. (Id. at 12.) In response, Defendant argues Plaintiff's demands were not timely as a matter of law pursuant to O.C.G.A. § 33-4-6(a), because it had no obligation to pay at the time the demands were issued, and Plaintiff has not identified evidence sufficient to support his claim that Defendant's conduct was "frivolous" or "unfounded" as required to prove bad faith. (Doc. 69, at 3.)

O.C.G.A. § 33-4-6(a) provides:

In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss

25

or $5,000.00, whichever is greater, and all reasonable
attorney's fees for the prosecution of the action
against the insurer.

Plaintiff seeks recovery under this statute, and based on the
statute's language, the Court must determine whether he has
sufficiently satisfied the elements of such a claim in order to
deem summary judgment appropriate.  Georgia courts have outlined
that claims for bad faith under O.C.G.A. § 33-4-6 require the
insured prove:

> 1) that the claim is covered under the policy, (2) that
> a demand for payment was made against the insurer within
> 60 days prior to filing suit, and (3) that the insurer's
> failure to pay was motivated by bad faith.  Since the
> statute imposes a penalty, its requirements are strictly
> construed.  Consequently, a proper demand for payment is
> essential to recovery.

_Lavoi Corp. v. Nat'l Fire Ins. of Hartford_, 666 S.E.2d 387, 391
(Ga. Ct. App. 2008).[4]  For the pre-suit demand "[t]o be proper,
'the demand must be made at a time when immediate payment is due.
An insured cannot legally demand immediate payment if the insurer
has additional time left under the terms of the insurance policy
in which to investigate or adjust the loss.'"  _Villa Sonoma at
Perimeter Summit Condo. Ass'n, Inc. v. Com. Indus. Bldg. Owners
All., Inc._, 824 S.E.2d 738, 743 (Ga. Ct. App. 2019) (quoting
_BayRock Mtg. Corp. v. Chicago Title Ins. Co._, 648 S.E.2d 433, 435

---

[4] While the Court in _Lavoi_ stated a demand must come _within_ 60 days prior to
filing suit, the 60-day requirement has been interpreted to mean that the
insured must make a demand for payment under the policy more than 60 days _before_
filing suit.  _See Villa Sonoma_, 824 S.E.2d at 743.

(Ga. Ct. App. 2007)).  "If the investigation or adjustment of the claim is ongoing, consistent with the policy terms, the insurer is not yet in a position to conclude that the insured had a right to the amount claimed in the demand."  Id. (citation omitted).

"As an initial matter, insurance is a matter of contract and contract law rules and interpretations apply." BLB Constr., Inc. v. Auto-Owners Ins. Co., 418 F. Supp. 3d 1325, 1330-31 (S.D. Ga. 2019) (quoting Rothell v. Cont'l Cas. Co., 402 S.E.2d 283, 284 (Ga. Ct. App. 1991)) (alterations adopted and quotation marks omitted).  Therefore, words used in the Policies will be given their ordinary meaning, and while the hallmark of contract interpretation is to ascertain the parties' intentions, when the terms are clear and unambiguous, the Court will look at the contract alone to find the parties' intent.  Id. at 1331 (citations and quotations omitted).  Bearing this in mind, the Court looks at the Parties' arguments for and against summary judgment.

First, there is no dispute as to element one – the Parties agree that Plaintiffs' claims were ultimately covered under the Policies, and Plaintiff has received the payout of his claims at this time.  As to element two, Plaintiff filed suit March 8, 2021. (Doc. 1-1, at 4.)  This was way more than 60 days after Plaintiff's demand which was sent to Defendant via facsimile on July 17, 2020. (See Doc. 6-5.)  Therefore, element two is satisfied under the statute; however, Defendant argues the demand was not timely per

the Policies because under the Policies' clear language, no legal action can be brought for at least 60 days after written proof of loss or covered injury has been furnished. (Doc. 69, at 3; Doc. 69-3, at 9; Doc. 69-4, at 10.) The Policies clearly state that no legal action can be brought against Defendant for at least 60 days after written proof of loss or covered injury has been furnished; however, Plaintiff argues this language is irrelevant because he simply served a demand, he did not bring legal action. (Doc. 75, at 7-8.) The Court agrees with Plaintiff's interpretation of the Policies and finds his demands are not "legal action," and therefore, no legal action was initiated until this case was filed. Therefore, the Court finds the demands were timely as a matter of law, as they were sent more than 60 days before filing this action, thereby satisfying element two. As such, the only remaining element of this claim is whether Defendant's failure to pay was motivated by bad faith, which Plaintiff argues is undisputed based on the evidence. The crux of Plaintiff's motion for summary judgment is that Defendant possessed sufficient proof to determine liability on May 20, 2020, making his July 17, 2020 demand proper for immediate payment, and Defendant's failure to comply with the demand or make payment in a timely manner constitutes bad faith. (Doc. 57-1, at 6-16.)

"Bad faith is shown by evidence that under *the terms of the policy* under which the demand is made and under the facts

surrounding the response to that demand, the insurer had no 'good cause' for resisting and delaying payment." BLB Constr., 418 F. Supp. 3d at 1335 (quoting Lawyers Title Ins. Corp. v. Griffin, 691 S.E.2d 633, 637 (Ga. Ct. App. 2010)). "Bad faith has also been defined as 'any frivolous and unfounded refusal in law or in fact to comply with the demand of the policyholder to pay according to the terms of the policy.'" Id. at 1335-36 (quoting S. Gen. Ins. Co. v. Kent, 370 S.E.2d 663, 665 (Ga. Ct. App. 1988)). Defendant argues Plaintiff is not entitled to summary judgment on his claim because there is no evidence its handling of the claim was unreasonable or that the delay in payment was frivolous or unfounded. (Doc. 69, at 4-6.) The Court agrees.

Plaintiff argues Defendant "had no reason whatsoever to resist and delay payment." (Doc. 57-1, at 12.) He argues that after his demand, Defendant had a statutorily allowed 60-day period in which it could conduct a reasonable investigation, and its tardy determination that the claims were payable illustrate a finding of bad faith. (Id. at 15-16.) Plaintiff also makes a policy argument that permitting Defendant to avoid bad faith penalties here would set an undesirable precedent incentivizing others to ignore statutory demands and claim ignorance. (Id. at 16.) Additionally, Plaintiff makes arguments regarding the Georgia Unfair Claims Settlement Practices Act, asserting that while not a cause of action in this case, the Court can admit evidence of a state's

unfair claims practices act in insurance bad faith actions.   (Id. at 13.)   None of the cases Plaintiff cites for this proposition are binding on this Court, and furthermore, the Court will not engage in determining the viability of a cause of action not presently before it.   Therefore, the Court will not use Plaintiff's assertions under the Georgia Unfair Claims Settlement Practices Act in its analysis of this motion.

In opposition to Plaintiff's motion, Defendant argues the thrust of Plaintiff's argument is that it was *per se* bad faith for it to not make payment by September 15, 2020 - 60 days after he sent his demand.   (Doc. 69, at 4.)   However, Defendant argues, Plaintiff fails to provide evidence regarding its investigatory steps to determine whether the claims were actually payable, fails to establish that the failure to make "timely" payment was not supported by any reasonable ground, and ultimately fails to show Defendant acted in bad faith.   (Id. at 4-5.)   The crux of Defendant's argument is that Plaintiff has failed to meet his burden and cite to sufficient evidence to establish Defendant's purported delay in payment was frivolous or unfounded.   (Id. at 5.)

While the evidence is clear that Defendant did not send payment within 60 days of receiving Plaintiff's demand, there is nothing cited in Plaintiff's motion to prove such delay was made in bad faith.   Plaintiff nakedly asserts that Defendant "cites no

good faith reason to resist or delay payment," which the Court does not find to be accurate. (Doc. 75, at 4.) In Plaintiff's reply brief, he himself states Defendant had the needed information but the information "had not been reviewed to [Defendant's] satisfaction" and that during the 60-day period of demand, Ms. Hagerty called Dr. Pursley, decided to send the medical records to Dane Street for review, and that Ms. Hagerty reviewed the records herself. (Id. at 5.) This information alone illustrates that Defendant was working on processing the claim during this time and was not just experiencing an "unexplained delay" as Plaintiff argues. (See id. at 7.) The facts, as asserted by Plaintiff, show that Defendant was working through his claims both before and during the demand period, as well as during the period of delay after the demand period expired, and Plaintiff cites to no evidence that Defendant's actions were frivolous or unfounded. Ultimately, the Court finds that Plaintiff has failed to provide evidence that the insurer had no "good cause for resisting and delaying payment." Ga. Int'l Life Ins. Co v. Harden, 280 S.E.2d 863, 866 (Ga. Ct. App. 1981) (quotation marks omitted). As such, Plaintiff did not prove the third element required to prove bad faith under O.C.G.A. § 33—4-6, and his motion for summary judgment (Doc. 57) shall be **DENIED**.

## C. Defendant's Motion for Summary Judgment

Finally, the Court addresses Defendant's motion for summary judgment, in which it argues no genuine issues of material fact remain and it is entitled to judgment as a matter of law. (Doc. 67, at 1.) Defendant relies on two main arguments not already settled by the Court as the basis for its motion: (1) Plaintiff has no evidence to support his allegations that any delay in payment by Defendant was "unfounded" or "frivolous" as required to establish bad faith; and (2) the undisputed evidence shows the reason for any delay was the need for Defendant to conduct an investigation to resolve genuine factual questions that impacted whether Plaintiff was entitled to the Policies' benefits.[5]  (Id. at 2.)  The Court addresses each of these in turn.

### 1. Evidence the Delay was "Unfounded" or "Frivolous"

As outlined above, a claim for bad faith under O.C.G.A. § 33-4-6 requires "evidence that under *the terms of the policy* under which the demand is made and under the facts surrounding the response to that demand, the insurer had no 'good cause' for resisting and delaying payment." BLB Constr., 418 F. Supp. 3d at 1335 (citations and quotation marks omitted).  Bad faith has also been defined as: "any frivolous and unfounded refusal in law or in fact to comply with the demand of the policyholder to pay according

---

[5] Defendant also argues Plaintiff's demand letters were insufficient; however, the Court addressed this argument in deciding Plaintiff's motion for summary judgment and for the sake of brevity will not go through it again.

to the terms of the policy." <u>Id.</u> at 1335-36 (citation and quotation marks omitted).

In opposition to Defendant's motion, Plaintiff continuously argues Defendant did not have additional time to investigate the loss beyond the 60-day period provided in the statute, and Defendant failed to make payment within that 60-day statutory period after his demand. (Doc. 80, at 3-4.) However, Plaintiff's arguments miss the mark – it is undisputed Defendant failed to make the payout within 60 days after Plaintiff served his demand, so his continuous statements about that are unhelpful to the Court's analysis.[6] The issue the Court is examining, and what makes up the root of the pending claim, is whether Defendant's failure to pay Plaintiff within 60 days after he made his demand for such payment was done in bad faith.  Plaintiff acknowledges that Defendant's reason for delay was its need to investigate, but argues it was simply a self-induced delay and such failure cannot be the "good cause" necessary to avoid its bad faith refusal to pay on time.  (<u>Id.</u> at 5.)  Plaintiff also harps on the fact Defendant ignored Plaintiff's and Plaintiff's counsel's phone calls; however, he cites no authority to illustrate that failing

---

[6] Plaintiff also argues that the Policies provided Defendant with no time in which to investigate after he made his claims; however, this argument is unhelpful to the Court's analysis because O.C.G.A. § 33-4-6 allows a 60-day period in which an insurer can investigate the claim after receiving a demand regardless of the investigative terms provided under the specific insurance policy. (<u>See</u> Doc. 57-1 at 11.); <u>See</u> <u>Primerica Life Ins. Co. v. Humfleet</u>, 458 S.E.2d 908, 910 (Ga. Ct. App. 1995) ("Clearly, the purpose of the statute's demand requirement is to adequately notify an insurer that it is facing a bad faith claim so that it may make a decision about whether to pay, deny or further investigate the claim within the 60-day deadline.").

to return phone calls constitutes bad faith.   (See id. at 6.)
Furthermore, the Notes for Claim Plaintiff cites in his response
show there was contact between he and Defendant regarding the
status of the case as late as September 16, 2020 and that Defendant
advised the medical records were being reviewed, negating
Plaintiff's point that Defendant simply ignored him.  (Doc. 80, at
6; Doc. 57-3, at 21-22.)

Defendant asserts that aside from the delay in payment,
Plaintiff has failed to point to evidence to show Defendant's
decision to pay after a full investigation was "frivolous" or
"unfounded", making Plaintiff's claim for bad faith fail as a
matter of law.  (Doc. 67, at 6.)  Based on the record, the Court
agrees with Defendant that there is an absence of evidence
sufficient for Plaintiff to prove Defendant's delay was
"unfounded" or "frivolous," and Plaintiff has not rebutted this
assertion by showing the record does in fact contain evidence
sufficient to sustain a directed verdict.   Based on this,
Plaintiff's claim for bad faith fails.  Nevertheless, the Court
looks at Defendant's second argument to see if there is evidence
of any reasonable ground provided for the delay, thereby further
negating the granting of bad faith penalties.

2. Justified Reason for Delay

Defendant argues it has no burden to prove it has *not* acted
in bad faith; however, the undisputed facts show summary judgment
should be granted because the delay in payment was the result of

a genuine factual dispute that required an investigation to determine whether Plaintiff's claims were payable. (Doc. 67, at 7.)  "Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim and where there is a disputed question of fact." B.S.S.B., Inc. v. Owners Ins. Co., No. 7:08-CV-112, 2010 WL 320229, at *6 (M.D. Ga. Jan. 20, 2010) (citing Allstate Ins. Co. v. Smith, 597 S.E.2d 500, 503 (Ga. Ct. App. 2004)).  Plaintiff continuously argues that Defendant failed to investigate the claims in a timely fashion; however, Plaintiff does not dispute an investigation took place. (See Doc. 80, at 7.)  As the record clearly shows, the initial review of Plaintiff's claim by a nurse consultant found the claims were unpayable, but Defendant did not believe this conclusion was correct, so it continued to review the claims. (Doc. 84, at 3-4; Doc. 57-3, at 21-22.)  Defendant sent the records to Dane Street for further review, which ultimately determined the claims were payable and immediately paid Plaintiff. (Doc. 57-3, at 22-23.) Based on these facts alone, the Court finds there is undisputed evidence of a reasonable ground to continue the investigation, and while irrelevant for the analysis, the Court also points out that had the inquiry stopped after the nurse's review, Plaintiff would not have received any money, so the continued investigation was beneficial to him.

Ultimately, the Court finds that "[a]side from the mere passage of time, [Plaintiff] has pointed to no evidence [Defendant]

acted in bad faith" in ultimately paying Plaintiff the Policy payouts but doing so after the 60-day statutorily allotted time following Plaintiff's demand.  See B.S.S.B., 2010 WL 320229, at *7.  The duty is on Plaintiff to prove bad faith, and he has failed to provide evidence where a reasonable juror could determine Defendant's dilatory conduct in granting him the payouts under the Policy was done in bad faith.  The evidence shows Defendant put forth a reasonable ground to contest the claim and continue its investigation; therefore, Plaintiff's claim for bad faith fails, and Defendant is entitled to summary judgment.[7]

## VI. DEFENDANT'S MOTION TO STRIKE

Defendant filed a motion to strike Plaintiff's sur-reply to Defendant's motion for summary judgment.  (Doc. 88.)  However, Defendant then filed a motion to withdraw its motion to strike. (Doc. 90.)  Based on this, Defendant's motion to strike (Doc. 88) is **DENIED AS MOOT** and Defendant's motion to withdraw (Doc. 90) is **GRANTED**.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment (Doc. 35) is **DENIED**, Plaintiff's second motion for partial summary judgment (Doc. 57) is **DENIED**, Plaintiff's

---

[7] Defendant requested oral argument in its reply in support of its motion for summary judgment.  (Doc. 84.)  The Court has been able to decide the issues before it without a hearing, and therefore this request is **DENIED AS MOOT**.

motion for exclusion of Barbara Mueller's Opinions (Doc. 63) is **GRANTED IN PART and DENIED IN PART**, Defendant's motion to exclude John Manly's Opinions (Doc. 65) is **GRANTED**, Defendant's motion for summary judgment (Doc. 67) is **GRANTED**, Defendant's motion for hearing (Doc. 84) is **DENIED**, Defendant's motion to strike Plaintiff's sur-reply (Doc. 88) is **DENIED AS MOOT**, and Defendant's motion to withdraw its motion to strike (Doc. 90) is **GRANTED**. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendant, **TERMINATE** all other pending motions, if any, and **CLOSE** this case.

   **ORDER ENTERED** at Augusta, Georgia, this 21ST day of March, 2023.

                                   _____
                                   J. RANDAL HALL, CHIEF JUDGE
                                   UNITED STATES DISTRICT COURT
                                   SOUTHERN DISTRICT OF GEORGIA